**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Shirley WOZNIAK,**
**Defendant-Appellant.**

No. 85–1539.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1985.

Decided Dec. 30, 1985.

Donald T. Bertucci, Chicago, Ill., for defendant-appellant.

Alexander S. Vesselinovitch, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and POSNER and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Veterans Administration and the Federal Housing Authority guarantee mortgage loans to eligible people. The VA will guarantee as much as 60% of the loan, and the buyer may obtain the loan for 100% of the price of the dwelling. The FHA will guarantee 100% of the loan, but the buyer must provide a down payment, so that the loan will not exceed 90% of the purchase price. Both the FHA and the VA will guarantee loans only to people whose income and assets provide reasonable assurance of repayment.

These programs create opportunities for fraud. One sort of fraud is to misrepresent the income and assets of the applicants for loans. Another is to inflate the stated purchase price of the house in order to induce the government to guarantee a higher loan. For example, if the price of a house is $50,000, the FHA will not guarantee more than $45,000 of a loan to purchase this house. The buyer might falsely report that the actual purchase price was $56,000, of which $6,000 was his down payment. Then the FHA would be willing to guarantee a loan of $50,000. This fraud would enable the buyer to obtain 100% financing, fully guaranteed, contrary to the rules of the program.

Shirley Wozniak and her husband Roger committed both kinds of frauds. They operated Crown Realty in Lombard, Illinois. (At the beginning of the time in question Roger owned Crown, and Shirley was an agent; later Shirley became the owner and registered broker of Crown.) The indictment charged Shirley and Roger with perpetrating large numbers of frauds in the course of Crown's business. The frauds included inflating the reported purchase price of houses to increase the guarantee, manufacturing false documents (called gift letters) purporting to show the availability of funds for down payments, and misrepresenting the employment and income of buyers. The first count charged Roger and Shirley with a conspiracy to submit false statements to the VA and FHA, and other counts charged the completed submission of false statements. Roger was convicted and withdrew his appeal. Shirley was convicted of the conspiracy and of four substantive counts under 18 U.S.C. §§ 371, 1001, and 1010. Her sentences were suspended in favor of five years' probation.

Shirley's principal argument is that the judge should have given an instruction that would have focused its attention on the possibility that the prosecution had shown multiple conspiracies. Count one of the indictment charged that Shirley and Roger participated in a conspiracy, spanning several years, to defraud the FHA and the VA through the operation of Crown. The court told the jury that it must determine whether the prosecution established the single conspiracy charged. Shirley wanted this additional instruction: "You are further instructed, with regard to the alleged conspiracy offense, that proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges.... If you find that no such conspiracy existed, then you must acquit the defendant as to that charge.... If you find that a particular defendant is a member of another conspiracy, not the one charged in the indictment, then you must acquit that defendant." The district judge declined to give this instruction.

The instruction Shirley wanted would have told the jury to acquit her if

she did not join exactly the conspiracy charged. A jury should be told no such thing. Quite the contrary, a jury may be told to convict a defendant who committed some variant of the events charged in the indictment, so long as the variant is also illegal. This is the familiar function of a lesser included offense instruction. The defendant may have the right to elect between such an instruction and the charge as drafted, but he cannot both draw the jury's attention to a more restricted crime and insist on acquittal because of the difference between this crime and the one charged. The choice is not entirely the defendant's anyway. The prosecutor also may elect to proceed on a subset of the criminal acts charged. See *United States v. Miller*, —— U.S. ——, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985). So long as the indictment gives notice of the crime charged, the prosecutor may narrow its scope at trial.

There are limits to the variance between the indictment and proof. If the indictment charges a large-scale conspiracy to defraud the FHA and the VA, and the proof shows only a somewhat smaller conspiracy to defraud the VA plus a separate conspiracy to defraud the FHA, the defendant may be convicted—but only of one conspiracy. If the proof should show a conspiracy to rob banks, the defendant could not be convicted at all; this variance would be fatal. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). But the argument Shirley makes does not establish any danger that the jury convicted her of a crime different from the conspiracy charged. She maintains only that there were, at most, lots of little conspiracies—one per fraudulent transaction. She was on notice of the nature of the charge.

It is never helpful to pose a legal question without knowing the significance of the answer. The answer to the question "one conspiracy or many" may be pertinent to punishment, for multiple conspiracies support cumulative punishment. We have set aside cumulative sentences arising from convictions for multiple conspiracies when the only justification for the multiple con-

victions was the prosecutor's unwillingness or inability to produce enough evidence to demonstrate that there was one large conspiracy. *United States v. Cerro*, 775 F.2d 908 (7th Cir.1985). The prosecutor cannot use the failure of proof to multiply the sentence. At other times the question "one conspiracy or many" controls exposure to punishment under the doctrine of *Pinkerton v. United States*, 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946), which imposes liability on conspirators for the substantive crimes of co-conspirators, even crimes of which the defendants had no knowledge. When the prosecutor seeks to fix substantive liability under *Pinkerton*, a failure to prove a single venture will reduce the defendant's exposure. At still other times the question "one conspiracy or many" controls admissibility of evidence under the coconspirator exception to the hearsay rule. See Fed.R. Evid. 801(d)(2)(E). The extent of the conspiracy also might affect the propriety of joinder.

Shirley cannot complain that the prosecutor selected one conspiracy rather than many (as it did in *Cerro* ). One conspiracy was harder to prove and reduced her exposure to punishment. She did not complain of misjoinder; all of the affairs of Crown were sufficiently connected to be tried together. The different transactions were part of a common scheme, see Fed.R. Crim.P. 8(a), and the two Wozniaks participated together, allowing a joint trial under Rule 8(b). See *United States v. Dounias*, 777 F.2d 346, 348–51 (7th Cir.1985); *United States v. Velasquez*, 772 F.2d 1348, 1352–53 (7th Cir.1985).

■ Shirley did not and could not complain that the charge of one conspiracy exposed her to punishment under *Pinkerton*, for several reasons: first, the indictment charged her with substantive offenses only for frauds in which she participated; second, the judge did not give a *Pinkerton* charge, so the jury was limited in considering the substantive counts to Shirley's own acts; third, even if there

were multiple conspiracies she could have been charged with the substantive acts of her confederates. Shirley and Roger were at the "hub" of this conspiracy. They dealt continuously with the other agents at Crown Realty, and they were implicated in one way or another in almost everything that happened there. If the government had charged an employee of Crown—say an agent who worked there for six months and took part in two fraudulent deals—with being a member of a lengthy conspiracy involving the entire staff of Crown, that person might sensibly protest that he should not be held responsible for Roger's acts before he arrived or after he left (or even for Roger's and Shirley's other acts while he was there). The "one conspiracy or many" question might be resolved in favor of focusing the jury's attention on smaller conspiracies, though even so the evidence might support the finding of a single conspiracy. When the indictment charges the "hub" of the conspiracy—one dealing with all of the peripheral figures, who do not necessarily deal with each other—it is usually unnecessary to draw attention to the ways in which the plan might be recast as a series of more limited agreements. *United States v. Kendall,* 665 F.2d 126 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1983). Cf. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (reversing a conviction because the improper finding of a single conspiracy prejudiced the peripheral defendants).

This leaves only the possibility that the charge of a single conspiracy made it possible to introduce damning evidence of co-conspirators' statements. Shirley challenges the judge's disposition of this point. The evidentiary issue, however, has nothing to do with the instructions to the jury. The judge alone decides whether the prosecutor demonstrated the existence and scope of the conspiracy. Shirley therefore was not entitled to an instruction drawing special attention to the question "one conspiracy or many," and she certainly was not entitled to the instruction she proposed,

which called for acquittal if the evidence showed a series of smaller agreements.

At all events, the district judge found that the prosecutor adequately established the conspiracy. Both Shirley and the prosecutor treat this case as one in which the district judge never made the finding called for (though not absolutely required) by *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978). Shirley says that before trial she asked the judge to determine whether there was enough evidence to establish a conspiracy, but that he refused to do so; then, she says, she preserved her rights by moving for acquittal at the close of the government's case. The prosecutor replies that this motion did not draw the court's attention to the question whether the evidence made out a conspiracy, and that the point has been waived.

Neither party discusses the opinion the district court wrote before trial—an opinion that should have been attached to Shirley's brief under Circuit Rule 12(a) but was not. The district court received the prosecutor's proffer of evidence and wrote: "This court is satisfied with that proffer as respects the existence of a conspiracy. Because no particular statements are identified, no determination as to whether a particular statement was made in furtherance of that conspiracy can be made. That determination can be made at trial.... [Until then] this court is satisfied with the government's proffer showing the existence of a conspiracy." This is not the sort of finding the appellate court should be expected to dredge out of the record without the assistance of counsel. The district judge made the critical finding and invited Shirley to object to particular statements at trial on the ground that they were not in furtherance of the conspiracy. She did not, and that is that. Fed.R.Evid. 103(a)(1).

▇ Shirley's remaining arguments include an attack on the sufficiency of the evidence. Viewed in the light most favorable to the government, the evidence established that Shirley took part in several real estate deals in which prices were inflated, gift letters invented, and employment ref-

erences manufactured. Clients and employees of Crown Realty described Shirley's role in these transactions. Several of the false documents bear her signature. (There was a dispute about whether she affixed these signatures, but this is the province of the jury.) Shirley was a principal of Crown Realty; she and Roger were the central figures in the venture. The evidence was adequate, and the other claims of error do not require discussion.

AFFIRMED