UNITED STATES of America,
Plaintiff–Appellee,

v.

Marvin Louis GUY,
Defendant–Appellant.

No. 90–1532.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1990.
Decided Feb. 7, 1991.

Christina McKee, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Marcie E. Goldbloom, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, WOOD and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

The defendant-appellant, Marvin Louis Guy, was tried and found guilty of one count of bank robbery in violation of 18 U.S.C. §§ 2113(a). Guy was sentenced to a prison term of fifty-seven months, followed by sixty months of supervised release. In this appeal, Guy claims that he was denied his sixth amendment right to a fair trial before an impartial jury. Specifically, Guy attacks the jury composition and selection process and the district court's refusal to provide the jury with a copy of a witness's testimony during deliberation. For the reasons discussed in this opinion, we reject Guy's claims and affirm his conviction.

## I.

On Friday, February 3, 1989, at approximately 9:00 a.m., the Speedway Banking Center Branch of Banc One Indianapolis was robbed by a young African–American male wearing a dark waist-length jacket, tennis shoes and a black stocking cap. An audit of the bank determined that $1,272.00 was taken. Marvin Louis Guy ultimately was charged with this robbery, and on December 4, a twelve-member petit jury was impanelled to hear the evidence against him. All the venirepersons, and consequently all the resulting petit jurors, were Caucasians. Guy is African–American. During the *voir dire* examination of the prospective jurors, Guy objected to the racial composition of the panel, that is, to the fact that there would be no members of his race on the petit jury. Specifically, Guy challenged the method by which prospective jurors were chosen, claiming that the population from which the prospective jurors were drawn included a significant percentage of African–Americans. Guy argued that there should be some members of the African–American community in his pool of prospective jurors. Yet because Guy could provide no factual evidence to support his claim that the method of selecting prospective jurors was improper, the

district court overruled his objection and proceeded with the *voir dire.*

The evidence adduced at trial implicated Guy as the robber of the Banc One. Several witnesses testified to seeing the above-described black male rob the bank, flee the scene in a blue Ford automobile with another black male, park the blue Ford in the lot at the Carriage House Apartment Complex, set the blue car on fire, and then leave the parking lot in another vehicle. The government's key witness was Darrin McDaniels, who also was charged with the robbery of Banc One. McDaniels, who pleaded guilty to the robbery, testified that he drove the get-away car after Guy robbed the bank. McDaniels' testimony gave a chronological account of the robbery and the flight from the bank. His testimony was largely corroborated by other witnesses who gave similar descriptions of the robber and the robbery. Although there were some differences in the witnesses' testimony concerning the manner in which McDaniels and Guy came and went from the apartment complex, these inconsistencies apparently were insufficient in the jury's opinion to raise any reasonable doubt regarding Guy's guilt.

After about one and one-half hours of deliberation, the jury sent a note to the judge requesting a copy of McDaniels' testimony. After hearing the arguments of counsel regarding the jury's request, the district court declined to send a copy of the McDaniels' testimony into the jury room. The court determined that giving the jury a copy of one witness's testimony would unduly highlight that testimony in the minds of the jurors. The court noted that it was a relatively short trial, lasting only one and one-half days, and thus the jurors should have no trouble recalling all the testimony. After three and one-half more hours of deliberation, the jury returned a verdict of guilty. On February 27, 1990, Guy was sentenced to the above-described prison term. Guy filed a timely notice of appeal.

## II.

Guy raises three claims on appeal. First, he renews his claim that the method of

selecting prospective jurors violated his right to an impartial jury guaranteed by the sixth amendment. Second, Guy claims that the district judge failed to overcome the bias of the Caucasian jurors with an adequate *voir dire.* Third, he claims that the district court abused its discretion by denying the jury's request for a copy of McDaniels' testimony. We will consider each of these claims in turn.

A. Selection of Prospective Jurors

■ The jury panel in this case was selected in accordance with The Plan for the Random Selection of Grand and Petit Jurors ("The Plan"), as authorized by the United States District Court for the Southern District of Indiana, effective November 1, 1985, and amended February 3, 1989. The Plan directs that the clerk of the court, under the supervision and control of the judges of the court, manage the jury selection process. For jury selection purposes, the Southern District of Indiana is divided into four divisions: the Indianapolis Division, the Terre Haute Division, the Evansville Division, and the New Albany Division. The Indianapolis Division, from which the jurors were drawn in the present case, consists of twenty-six counties located in and around the City of Indianapolis in the central part of the state.

The Plan states that, because Indiana law provides a uniform system of voter registration in all counties throughout the state, the voter registration lists represent a fair cross section of the community in the Southern District of Indiana. The Plan requires that the names of all registered voters in the Southern District of Indiana be placed in a pool from which random selections are made for the venire. Potential grand and petit jurors are, thus, chosen at random from the master voter registration lists for each county. The total number of names drawn for each division depends upon whatever the court deems sufficient for its grand and petit jury needs for a four-year period. The Plan concludes that this method of random selection of potential jurors from the voter registration lists ensures that the mathematical odds of any single registered voter being called for service are substantially equal.

■ The Supreme Court has determined that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana,* 419 U.S. 522, 528, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975). In order to establish a *prima facie* violation of the fair cross-section requirement, Guy must show:

(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). *See also United States v. McAnderson,* 914 F.2d 934, 941 (7th Cir.1990); *Humphrey v. United States,* 896 F.2d 1066, 1069 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 342, 112 L.Ed.2d 306 (1990). Once Guy has made a prima facie showing as to these elements, the burden shifts to the state to show that an overriding, significant state interest is manifestly advanced by those aspects of the jury selection process that result in the disproportionate exclusion of a distinctive group. *Duren,* 439 U.S. at 367, 99 S.Ct. at 670. *See also Davis v. Warden,* 867 F.2d 1003, 1006 (7th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 285, 107 L.Ed.2d 264 (1989).

The parties do not dispute that African–Americans form a distinct group in the community. *See Davis,* 867 F.2d at 1006 (citing *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880)). Thus, there is no question that Guy satisfies the first prong of *Duren.* Although posing somewhat greater difficulty, Guy may have satisfied *Duren*'s second prong as well. Under this second prong, Guy must prove that the representation of African–Americans on the venire from which the petit jury was chosen was not fair and reasonable in relation to their number in the community.

*Davis*, 867 F.2d at 1006. Here the relevant community is the twenty-six counties composing the Indianapolis Division of the Southern District of Indiana. To support his claim that the representation of African–Americans on the venire was not reasonable given the number of African–Americans in the community, Guy argues that the absence of any African–Americans on the venire failed to represent the significant percentage of African–Americans in the Indianapolis Division.[1] The government did not quarrel with these facts, but instead argued that, even assuming underrepresentation, Guy still could not demonstrate any systematic exclusion of African–Americans.[2] Thus, the resolution of Guy's claim turns on the third prong of *Duren:* whether Guy has demonstrated the systematic exclusion of African–Americans in his case.

The district court held that Guy had not satisfied this third prong. (Though the court did not specifically mention the *Duren* test by name, its grounds for rejecting Guy's challenges to the jury can fairly be characterized as a third-prong failure under *Duren.*) We agree. As the district court noted, the venire in Guy's case was randomly selected pursuant to an authorized plan. Guy presented no evidence to suggest that the lack of any African–American jurors on his panel was due to anything other than mere coincidence.[3] Guy's mere observation that there were no African–

Americans on a panel that was drawn from a population containing African–Americans simply is not sufficient to demonstrate any systematic exclusion. *Cf. Davis*, 867 F.2d at 1014–15 (Applying the *Duren* test to similar claims, we held that the appellant's census figures on the racial composition of Cook County were inadequate to establish that the underrepresentation of African–Americans on the appellant's venire was due to a systematic exclusion of such jurors in the selection process.); *Duren*, 439 U.S. at 366, 99 S.Ct. at 669 (Because the appellant demonstrated that only 14.5% of the persons on the weekly venires were women while women composed 54% of the adult inhabitants of the relevant community during the same period, the appellant established that the underrepresentation of women on his venire was due to their systematic exclusion in the jury selection process.).

■ Guy offers to this court a rather elaborate argument to overcome the deficiencies of his evidence on the third prong of *Duren.* Guy maintains that African–Americans are not afforded an equal opportunity to register to vote, and consequently are excluded systematically from the jury pool because voter registration rolls are the starting point for the Southern District's jury selection process. The basis for this argument rests on Guy's assertion that the current precinct scheme in the Southern

---

1. Guy's counsel first estimated that 25% of the population "in this area" were African–American. When the district court reminded counsel that the area from which the jurors were selected includes the 26 counties of the Indianapolis Division, counsel replied that, even if his initial estimate were excessive, the percentage of African–Americans in the Indianapolis Division still would be far larger than the 0% that were represented on Guy's jury panel.

2. We should mention that Guy also argues that African–Americans were underrepresented in the petit jury. The Supreme Court has recently stated, however, that a defendant has no sixth amendment right to a petit jury representing a fair cross-section of the community. *Holland v. Illinois*, — U.S. ——, 110 S.Ct. 803, 807, 107 L.Ed.2d 905 (1990) ("The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but

an *impartial* one (which it does).") (emphasis in original). *See also McAnderson*, 914 F.2d at 941. Thus, because Guy claims systematic exclusion of African–Americans and does not claim any illegitimate exercise of peremptory challenges, our inquiry focuses on the possible exclusion of members of the defendant's race on the venire.

3. The defendant's brief contains population figures for the Indianapolis standard metropolitan statistical area (comprised of eight counties) and for Marion County that show the percentage of African–Americans in those geographic areas. This data is not part of the record from the district court, and thus, plays no role in our analysis. "[New facts] may not be stored up for an appeal or generated expressly (as some of these documents were) for the appellate panel." *Branion v. Gramly*, 855 F.2d 1256, 1261 (7th Cir.1988), *cert. denied*, 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989).

District concentrates African–American votes, causing African–American residents to believe that their votes count less than the votes of Caucasian residents. Such a belief, Guy maintains, alienates African–Americans from the political process and leads to the systematic underregistration of African-Americans.

We offer two responses to these claims. First, Guy ignores our prior decisions that voter lists are not an improper source from which to draw a pool of jurors. *See Davis,* 867 F.2d at 1015; *United States v. Koliboski,* 732 F.2d 1328, 1331 (7th Cir.1984). As we pointed out in *Davis,* the federal courts that have addressed the constitutionality of voter registration lists unanimously agree that a state may constitutionally draw its jurors from voter lists. 867 F.2d at 1015 (collecting cases). Second, and more fundamentally, this appeal is not the appropriate forum in which to raise for the first time broad challenges to Indiana's precinct districting scheme. This court is neither willing nor equipped to evaluate such sweeping factual assertions. *See Branion,* 855 F.2d at 1261. If Guy wanted these matters considered, he should have brought them before the district court in a timely fashion. Be that as it may, with no demonstration of any systematic exclusion of African–Americans from Guy's venire, Guy's challenge to the selection of jurors is rejected.

**B. The *Voir Dire***

Guy also contends that the *voir dire* conducted by the district court was insufficient to detect or overcome any racial bias on the venire. The district judge, Guy argues, erred in not meeting the minimum level of inquiry necessary to ferret out any prejudicial feelings that may have existed among the venirepersons. In *United States v. Dellinger,* 472 F.2d 340 (7th Cir.1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), this court established the standard for evaluating a challenge to the *voir dire* examination of the district court. In order for us to sustain Guy's contention, it is not necessary for him to show that members of the jury were in fact prejudiced. *Id.* at 367. Instead, we focus exclusively on "whether the procedure used for testing impartiality

created a reasonable assurance that prejudice would be discovered if present." *Id.* Although there is no specific formula for determining the appropriate breadth and depth of an acceptable *voir dire,* the district judge's examination of prospective jurors must conform to "the essential demands of fairness." *Id.* (citing *Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931)). *See also McAnderson,* 914 F.2d at 942 ("The district court must make inquiry that is sufficient to allow *voir dire* to perform its responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence....") (citations omitted).

It is axiomatic that the purpose of *voir dire* is to ensure that the defendant will have an impartial jury. *McAnderson,* 914 F.2d at 942 (citing *Rosales–Lopez v. United States,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981)). In the present case, the basis of Guy's challenge lies in the fact that the judge did not question each juror individually regarding racial bias. Instead, the district judge asked a general question to all assembled jurors. The district judge's examination on the issue of racial prejudice reads in part:

> [I]n any court of law, racial prejudice and bias have no place whatsoever. And it is important in selecting jurors that we make clear race should have no bearing in the outcome of a case or in your consideration of the case.
>
> However, in probing everyone's own individual conscience, if they know they have feelings about race that would cause them not to be as fair to a person of another race as they would to a member of their own race, it's something we need to explore and need to know at this stage of the proceeding.
>
> If there is anyone on this panel who in their heart of hearts, after search of such things, feels they cannot be as fair to members of other races as they would to a member of their own race, would they please raise their hands. I know that's a tough question to ask, and it's a tough question to admit to. We all have bias and prejudices. I know if I had a case where a member of my own family

was involved, I would be the last person who should be judge on that case because I would tend to favor that member of my own family. And race in a way is like that. You have to know yourself. You are the only one that can know yourself. . . .

Transcript of Proceeding on December 4–5, 1989, pp. 30–31. With such a thorough statement concerning the need for fairness and such a firm plea to have each juror search his own "heart of hearts," we reject Guy's claim that this *voir dire* failed to uncover any racial bias in the venire simply because the district judge chose not to question each juror individually.

■ A judge has broad discretion in determining how best to conduct *voir dire*. *See McAnderson*, 914 F.2d at 942. *See also United States v. Sababu*, 891 F.2d 1308, 1325 (7th Cir.1989). As we previously have stated, "This court will not find that a trial court abused its discretion in conducting *voir dire* where there is sufficient questioning to produce, in light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right to challenge." *United States v. Hasting*, 739 F.2d 1269, 1273 (7th Cir.1984), *cert. denied*, 469 U.S. 1218, 105 S.Ct. 1199, 84 L.Ed.2d 343 (1985). As the excerpt from the *voir dire* demonstrates, the district court adequately questioned potential jurors about possible prejudice. The court repeatedly urged the venirepersons to probe their consciences to uncover any racial bias. Guy has made no showing that the district court's *voir dire* failed to provide "some basis for a reasonably knowledgeable exercise of the right to challenge." *Id.* Indeed, at no time during the *voir dire* did Guy even request that the court question each juror individually. Instead, Guy on appeal merely relies on generalized statements concerning the need to uncover possible bias in the venire. Such statements will not justify a reversal. *See Sababu*, 891 F.2d at 1325.

C. The Jury's Request for McDaniels' Testimony

■ Finally, Guy charges that the district court erred in denying the jury's request for a copy of McDaniels' testimony during its deliberation. Guy argues that the jury's request to have a copy of McDaniels' testimony provided to them indicated that they desired to have his story clear in their minds as they compared it to the testimony of other witnesses. The failure to provide McDaniels' testimony to the jury, Guy concludes, denied him a fair trial. The decision to deliver testimony of a witness to the jury during its deliberations is "a matter purely within the trial court's discretion." *United States v. Keskey*, 863 F.2d 474, 476 (7th Cir.1988). We will disturb this decision only when the district court abused its discretion. *United States v. Garner*, 837 F.2d 1404, 1425 (7th Cir.), *cert. denied*, 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988). We hold that the district court did not do so in this instance.

In considering the jury's request for a copy of McDaniels' testimony, the district court noted in the presence of counsel that sending the testimony of one witness to the jury room would unduly highlight that testimony. The court further noted that the length of the trial was short, and thus the jurors' memory of McDaniels' testimony should be sufficiently fresh. Transcript of Proceeding on December 4–5, 1989, pp. 208–209. These concerns are legitimate reasons for the district court in its discretion to refuse the jury's request. *See Keskey*, 863 F.2d at 477. *Cf. United States v. Croft*, 750 F.2d 1354, 1367 (7th Cir.1984) (within the district court's discretion to refuse jury's request for transcripts given the length of time required to obtain transcripts and the impact of the delay on the jury).

### III.

For the foregoing reasons, we hold that claims of defendant Marvin Louis Guy are without merit. Therefore, his conviction is

AFFIRMED.