UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Anthony DUFF, Mason P. Peck, Thomas Lee Ridley III, and Willi J. Hill, Defendants–Appellants.

Nos. 94–4002, 95–1158, 95–1241 and 95–1243.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1995.

Decided Jan. 29, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied March 18, 1996.

John Earl Dowd, Melanie C. Conour (argued), Office of the United States Attorney, Indianapolis, IN, for United States.

Martin E. Solomon (argued), Solomon & Solomon, Indianapolis, IN, for Michael Duff.

Mark Inman (argued), Indianapolis, IN, for Mason P. Peck.

Kevin McShane (argued), Ann Gordon, McShane & Gordon, Indianapolis, IN, for Thomas L. Ridley, III.

R. Scott McFarland (argued), Muncie, IN, for Willi J. Hill.

Before EASTERBROOK, RIPPLE, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

But for the holding of *Ray v. United States*, 481 U.S. 736, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987), this would be a brief opinion. The only difficult issues concern defendants' convictions for conspiracy to distribute crack cocaine. Because conspiracy convictions do not affect the sentence of persons convicted, as these were, of substantive offenses, U.S.S.G. § 3D1.2(b) and Application Note 4, the issues we must confront are essentially irrelevant to the outcome. Conspiracy charges do not affect the trial, either, except to complicate and prolong it. The coconspirator exception to the hearsay rule does not depend on an indictment for conspiracy, see *United States v. Wozniak*, 781 F.2d 95 (7th Cir.1985), and the prosecution has not argued substantive accountability under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Still, every conviction leads to a $50 special assessment, which under *Ray* prevents us from invoking the concurrent sentence doctrine. All four appellants are proceeding as paupers, so collection of the $50 is unlikely. But here we are: the prosecution has invested tens of thousands of dollars to obtain the conspiracy convictions; it has paid defense counsel to try to thwart that objective; and now we are grappling with some thorny issues to determine whether the $50 assessments stand. All to what end? The prosecutor could not answer that question at oral argument, and we cannot think of a good reason. Time and money invested in obtaining these pointless conspiracy convictions allowed other offenders to avoid prosecution and punishment. (All United States Attorneys often decline prosecution because of budget and personnel constraints.) So we trudge on, but with grave doubt that public resources have been wisely deployed.

Thomas Lee Ridley III, ran a cocaine distribution network in Indianapolis, southern Indiana, and adjacent parts of Kentucky, including Louisville. Seventeen people were indicted. Seven of these pleaded guilty and the others were tried in two groups of five. Three among those who pleaded guilty testified for the prosecution. Some unindicted coconspirators plus an infiltrator, Anthony Watkins, also testified to the details of the operations. Ridley and his father (Thomas Ridley, Jr.), plus Willi Hill, Michael Duff, and Mason Peck went to trial first. All were convicted. Although the trial lasted a month, the jury convicted all defendants on all counts within hours. Thomas Ridley, Jr., died before sentencing; the surviving four received stiff sentences: Ridley life, Hill 500 months, Peck 400 months, and Duff 324 months. Most of the reasons they advance why we should reverse these judgments are implausible. They contend, for example, that the venire had too few blacks: only 3 among the 68 prospective jurors (= 4.4%). But there is no requirement that the venire (or for that matter the petit jury) mirror the general population. The constitutional requirement is that juries be drawn

"from a source fairly representative of the community." *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975). Some panels will have an unusually low (or high) proportion of one group or another. (Call this the "law of small numbers," a corollary to the law of large numbers.) Because "[d]efendants are not entitled to a jury of any particular composition", *ibid.,* the makeup of any given venire is not significant, provided all rules for selection have been observed. See also *Holland v. Illinois,* 493 U.S. 474, 482–83, 110 S.Ct. 803, 808–09, 107 L.Ed.2d 905 (1990). The Jury Selection and Service Act, 28 U.S.C. §§ 1861–78, gives accused persons ample means to discover whether the full jury panel represents the community from which it is drawn and whether the court is using proper procedures to draw a venire from the panel. Defendants did not use that opportunity and cannot complain about the venire in this case. As for other subjects: the evidence is overwhelming, the judge did not abuse his discretion in denying Hill's motion for severance, see *Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), and the sentences are authorized under the Guidelines.

The conspiracy charge leads to problems, however. Drug dealers do not record their undertakings with the care of securities lawyers, so it is always possible to debate who agreed to do what, and with whom. People who participate in the drug operations on Monday may conduct different illegal business on Tuesday (several defendants were members of the "Getto Boys" [sic] street gang in addition to Ridley's drug organization). Many complex criminal operations will be organized into cells, to cut down on the damage one turncoat can do; a particular person may think himself a member of the cell, while the head of several cells will think himself in charge of all. Suppliers may act as one outfit, distributors as another; a chieftain may run both sides of the operation as a single organization. Defendants seeking to make the most of this fog will take their cues from the prosecutor. If the indictment charges many affiliated conspiracies, the defendants will say that there was only one; if the indictment charges a single, comprehensive agreement, the defendants will respond that there were many, with small groups acting merely as suppliers to and customers of each other. This trial followed that pattern. The indictment charged one conspiracy. The defendants denied everything but added that any criminal agreements were more complex, and more numerous, than the prosecution envisaged. They asked the judge to instruct the jury that:

> Even if the evidence in the case shows that a defendant was a member of some conspiracy, but that this conspiracy is not the single conspiracy described in the indictment, you must acquit that defendant.

> Unless the government proves the existence of the single master conspiracy described in the indictment beyond a reasonable doubt, you must acquit the defendants.

■ The proposal included much more in the same vein, all taken from Devitt, Blackmar & O'Malley, *Federal Jury Practice and Instructions* § 28.09 (4th ed. 1990). The district judge declined, remarking that he had refused to give a multiple-conspiracy instruction before, and had been affirmed. *United States v. Auerbach,* 913 F.2d 407 (7th Cir. 1990). That might or might not be a good reason; it depends on why we affirmed. A reason specific to the earlier case (lack of evidence to suggest the existence of multiple conspiracies, for example) might be missing here—for this record could support a conclusion that some defendants were affiliated with interlocking groups possessing some independence rather than with a hierarchical organization having Ridley at the apex. Similarly, an affirmance based on a finding of harmless error would not counsel making the same decision again. As it happens, *Auerbach* was based on a lack of evidence to support a finding of multiple conspiracies, see 913 F.2d at 416, and therefore does not support the district court's decision. Still, it remains an open question whether the instruction defendants proposed is a good way to tell the jury what it needs to know. It includes the proposition that if the prosecutor fails to prove the existence of (or a given defendant's membership in) the charged conspiracy, the jury should acquit. But other

instructions told the jury that. They set out the prosecutor's burden, described the elements of the offenses, and so on. If that is all the Devitt & Blackmar instruction conveys, it is redundant and should be omitted. Jury charges are too long as it is. People comprehend things better when the instructions are short and direct. But defendants did not want the multiple-conspiracies instruction for its value as surplusage; they wanted it because of the implication that if the prosecutor does not prove *exactly* the conspiracy described in the indictment, the jury should acquit. Judges should not give the jury that advice, because it is wrong. So we held in *Wozniak*, disapproving language quite similar to what defendants proposed. It is not an optional instruction, good for some cases but not others; it is an erroneous instruction that should not be given.

■■■ A defendant who maintains that the evidence shows a conspiracy different from the one charged in the indictment is arguing that there is a variance between pleading and proof. See *United States v. Stephenson*, 53 F.3d 836, 845–47 (7th Cir.1995), and *United States v. Emenogha*, 1 F.3d 473, 480 (7th Cir.1993), among the many cases in this circuit analyzing multiple-conspiracy arguments as variance claims. Variance comes in many forms. Suppose the indictment charges that A, B, C, . . . Z conspired to distribute cocaine in Louisville, and the proof shows that A . . . X distributed drugs, while Y and Z smuggled guns. The jury should convict A through X, notwithstanding the difference between the charge and the proof. The crime of conspiracy is an agreement, *United States v. Shabani*, —— U.S. ——, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994), which does not depend on the identity of the other conspirators. *United States v. Townsend*, 924 F.2d 1385, 1389–90 (7th Cir.1991). What is more, a prosecutor may elect to proceed on a subset of the allegations in the indictment, proving a conspiracy smaller than the one alleged. *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). Y and Z, however, should be acquitted because the indictment did not notify them about any gun-running accusation. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). An instruction of the kind the defendants

proposed in this case implies, however, that all 26 defendants should be acquitted if Y and Z were off on their own, and that advice is wrong.

■■■ Things are more difficult when the proof shows that A . . . T distributed drugs, while U . . . Z imported and furnished them to the distributors. This is the same line of business, but the steps can be conducted as a single enterprise (vertical integration) or as two groups related only as buyers and sellers. Distinguishing between conspiracy and the purchaser-seller relation is difficult, as the many opinions in *United States v. Lechuga*, 994 F.2d 346 (7th Cir.1993) (en banc), show. The jury should be told that extended dealings that produce interdependence (for example, by "fronting" drugs) support but do not require a finding of a single agreement. It needs to determine whether the two groups have agreed to advance a common goal, or whether instead each has an independent objective that it can achieve on its own, or at the expense of the other group. *United States v. Curry*, 977 F.2d 1042, 1052 (7th Cir.1992); *Emenogha*, 1 F.3d at 480. There must be "an agreement to commit a crime other than the crime that consists of the sale itself." *Lechuga*, 994 F.2d at 347. It is a close question in a case like this whether, if there are two independent groups, all 26 defendants still could be convicted. Defendants A through T certainly should be; and defendants U through Z are in the drug business, have conspired at the times and places alleged, want to see the distribution enterprise succeed, and therefore may be convicted even though the conspiracy is different in internal organization from the allegations of the indictment. But a rational trier of fact could think the operations too distinct, and therefore convict A . . . T while acquitting U . . . Z. The portions of the Devitt & Blackmar instruction that we have quoted do not provide this information; instead they imply that all 26 defendants should be acquitted. Another paragraph comes closer to the mark by informing the jury that

In determining whether or not any single conspiracy has been shown by the evidence

in this case you must decide whether common, master, or overall goals or objectives existed which served as the focal point for the efforts and actions of any members of the conspiracy.

Unfortunately, however, this language too implies that the jury must make an all-or-none decision, and that if it finds two criminal organizations it must acquit every defendant. The paragraph also does not quite capture the objective of the inquiry, for it implies that everyone must share the same "focal point." One can join a conspiracy to make money, even though others join it for different reasons. The question is whether the parties have agreed to advance a common goal.

■ Pattern books often fail to supply useful instructions because the circumstances with which they must deal are so diverse. The kind of instruction appropriate to our first case (some defendants dealing drugs and others, guns) differs from the instruction appropriate to the second (all defendants in the drug business, but the scope of their agreement debatable). The instructions for a case in which the indictment alleged that the drug ring had a money-laundering arm, but the launderers said that they were a separate organization, would take still another shape. What matters for current purposes, however, is that the defendants proposed a defective instruction, and the judge properly declined to give it. The instructions that he did give cannot be called plain error—which is the standard when the defendants do not propose an appropriate instruction on the subject. They enabled the defendants to make whatever arguments for acquittal were legitimately available. The evidence entitled the jury to find that all of the defendants agreed to advance a common unlawful objective, even if some were also organized into separate cells.

■ Willi Hill presents a separate issue concerning the definition of a conspiracy. He asked the judge to give this instruction:

> Formal requirements of the crime of conspiracy have not been met unless the defendant conspires with at least one bona fide coconspirator.

I instruct you that the confidential informant, Anthony Watkins, cannot be considered by you to be a bona fide coconspirator.

This instruction is a correct statement of the law: an agreement with an agent of the police is not a criminal conspiracy. *United States v. Lively*, 803 F.2d 1124 (11th Cir. 1986); *United States v. Barboa*, 777 F.2d 1420, 1422–23 (10th Cir.1985); *United States v. Escobar*, 742 F.2d 1196 (9th Cir.1984); *Sears v. United States*, 343 F.2d 139, 142 (5th Cir.1965). Watkins was serving under the direction and control of the Indianapolis police and the FBI. If Hill agreed only with Watkins to distribute drugs, then Hill had to be acquitted of conspiracy. But the judge refused to give this instruction, and he did not put on the record any reason for this action.

According to the prosecutor, the "indictment was very clear about the conspiracy Hill was charged with joining and who its alleged members were. Watkins was not a co-conspirator and there could have been no confusion about that fact. Therefore, the instruction was superfluous." It is disappointing to see such a disingenuous argument from the United States Department of Justice. Watkins was not named as a conspirator, but the indictment alleged that the 17 defendants "did knowingly conspire together and with diverse other persons known and unknown to the Grand Jury". Watkins could have been one of the "diverse other persons known and unknown to the Grand Jury". Several genuine members of the Ridley gang who were not named in the indictment testified for the prosecution, and agreement between Hill and these persons would have supported a conviction. Watkins' drug transactions with the defendants played a prominent role in the trial. Hill therefore was entitled to have the jury told, in no uncertain terms, that, if the sole agreement into which Hill entered was with Watkins, then Hill had to be acquitted of conspiracy. The instructions did not provide that information.

■ Nonetheless, the error is harmless. Testimony showed that Hill participated in many of the organization's activities as one of its supervisors. He was a large-scale distrib-

utor in his own right. Watkins entered at the bottom and had to be shown how to package cocaine for sale. No reasonable jury would have thought that Hill agreed only with Watkins. The omission of the instruction therefore did not matter—but it should be given the next time a similar situation crops up.

AFFIRMED.