**UNITED STATES of America,**
**Plaintiff,**

v.

**Jason BEST, Defendant.**

**No. 2:00–CR–171.**

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 7, 2002.

Clark W. Holesinger, Portage, IN, Thomas W. Vanes, Merrillville, IN, for defendant.

Gary T. Bell, United States Attorneys Office, Hammond, IN, for U.S.

### ORDER

LOZANO, District Judge.

This matter is before the Court on Defendant's July 15, 2002, oral motion to quash the petit jury venire. The Court has reviewed: (1) Defendant Best's Brief in Support of Motion to Quash Petit Jury

Venire, filed July 16, 2002; (2) the Government's response, filed July 18, 2002; and (3) Defendant's Response Jury Venire [sic], filed July 22, 2002. For the reasons set forth below, Defendant's oral motion to quash the petit jury venire is **DENIED**.

*BACKGROUND*

After the petit jury venire ("venire") for this case was sworn in on July 15, 2002, and after the first 12 venire members were seated in the jury box for the start of voir dire, Defendant, who was acting pro se (but had the assistance of standby counsel) approached the bench at a side bar conference and offered a general Sixth Amendment objection to the composition of the venire. The 42–member venire included two African–Americans. The Court informed Defendant that such a challenge required him to offer evidence of, among other things, a systematic exclusion of African–Americans. Defendant had no such proof readily available. In recognition of the leeway Defendant was entitled to as a pro se litigant, the Court offered Defendant the opportunity to present evidence and law in support of his objection at a later time.[1] *See Cummings v. Sch. Dist. of Lincoln, County of Lancaster, State of Neb.*, 638 F.2d 1168, 1169 (8th Cir.1981) (district court "appropriately gave [plaintiff] considerable latitude with regard to the examination of witnesses and the introduction of evidence in deference to her decision to proceed pro se at trial").

Later that day, after the conclusion of voir dire but before the jury was sworn in and as a courtesy to Defendant, the Court called its jury administrator, Ms. Sue Alcala, to testify regarding Defendant's concerns about how the venire was selected. Defendant, still acting pro se with the assistance of standby counsel, examined Ms. Alcala for approximately 15 minutes.[2] Among other things, Ms. Alcala testified that: (1) she did not know the racial makeup of the venire before its members arrived at the courthouse; (2) at the Court's request, she made telephone calls to each of the venire members who did not show up at the courthouse as scheduled on the morning of July 15, 2002 (the "no-shows"); and (3) she was able to reach some of the no-shows by telephone, and this resulted in two of the no-shows coming to court in the afternoon.[3]

The following day, Defendant filed a brief in support of his motion to quash the venire. Citing the Jury Service and Selection Act of 1968, 28 U.S.C. section 1861, *et seq.*, and the Sixth Amendment, Defendant asked this Court to quash the venire from which his jury was chosen. Defendant's 3–page brief cites three cases, includes a 1–paragraph recitation of facts, and makes unsupported assertions regarding census data.[4] In sum, Defendant complains that the venire did not include a fair cross-section of African–Americans and that the petit jury venire members summoned to

1. In the morning on July 17, 2002, Defendant asked the Court to convert his standby counsel to trial counsel. The Court obliged, and Defendant's foray into self-representation ended at that time.

2. Standby counsel appeared to provide Defendant with written questions to ask Ms. Alcala.

3. Ms. Alcala also testified that, of the 14 no-shows who did not come to the courthouse at any time on July 15, 2002, two of them reside in Gary, Indiana, and one resides in East

Chicago, Indiana. Although he has offered no evidence (either at the July 15, 2002, hearing or in his subsequent briefs) Defendant apparently believes that the cities of Gary and East Chicago, Indiana have the highest percentage of African–Americans of all cities in the counties from which the Court draws its venires (Lake and Porter Counties).

4. Defendant's unsupported assertions regarding the census data appear to be incorrect. *See* Footnote 6 *infra*.

the courthouse on July 15, 2002, were first offered to the parties in *United States v. Suggs,* No. 2:01–CR–98. Defendant asserts that if the jurors selected for *Suggs* had instead been available for his venire, the venire would have included more than two African–Americans. Defendant also argues that the Court's failure to force the appearance of the 14 no-shows contributed to the underrepresentation of which he complains.

## DISCUSSION

Defendant's claims under both the Jury Service and Selection Act (the "Act") and the Sixth Amendment are without merit.

### The Act

In order to pursue a claim under the Act, a defendant must make a motion "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds" for his motion. 28 U.S.C. § 1867(a). A defendant is only entitled to secure the testimony of a jury administrator in support of his motion if that motion "contain[s] a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions off [the Act]." 28 U.S.C. § 1867(d).

■ Here, Defendant's oral motion made after the venire had been sworn in but before questioning began barely satisfies the Act's timing requirement.[5] However, Defendant has not complied with the Act's requirement that he provide a sworn statement of facts which, if true, would constitute a substantial failure to comply with the Act's provisions. Defendant provided no such sworn statement on July 15, 2002, and no sworn statement appeared in the briefs he filed on July 16, 2002, or July

22, 2002. Nevertheless, the Court allowed Defendant to question its jury administrator on July 15, 2002, as a courtesy to Defendant, who was pro se at the time. A defendant who fails to comply with the Act's procedural requirements cannot pursue relief under the Act. *United States v. Phillips,* 239 F.3d 829, 841 (7th Cir.2001) (failure to make timely motion and provide sworn statement of evidence precluded statutory challenge); *United States v. Young,* 38 F.3d 338, 342 (7th Cir.1994) (statutory challenge waived by failing to raise objection in timely manner); *United States v. Grose,* 525 F.2d 1115, 1119 (7th Cir.1975) (failure to make timely motion and provide sworn statement of evidence precluded statutory challenge); *see also United States v. Percival,* 756 F.2d 600, 613 (7th Cir.1985) (defendant not entitled to evidentiary hearing where he failed to submit sworn statement of facts in support of his challenge to composition of grand jury). On this basis alone, the Court could deny Defendant's request for relief under the Act.

■ Even if Defendant had complied with the Act's procedural requirements, he would not be entitled to relief under it. The Act provides that "no citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862. The Act requires district courts to employ a "random selection method from the district['s] or division['s] registered voter or actual voter lists" when generating the source list used to summon potential jurors. *Phillips,* 239 F.3d at 841 (citing 18 U.S.C. § 1863(b)(2)). As the legislative committee reports state:

---

**5.** The Government does not contend that Defendant's oral motion was untimely under the Act.

If the voter lists are used and supplemented where necessary, and if the procedures outlined in the bill are otherwise rigorously followed, *it is no departure from the standards of the legislation that the qualified jury wheel, the venire or array,* or the jury itself, *may not reflect a community cross-section.* The act ... does not require that at any stage beyond the initial source list the selection procedure shall produce groups that accurately mirror community makeup. Thus, no challenge lies on that basis.

*Id.* (quoting S. REP. No. 891, at 17 (1967); H.R. REP. No. 1076, at 5 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1792, 1794) (emphasis added). In other words, as long as a district court utilizes a procedure for selecting jurors which complies with the random selection method required by the Act, the resulting venire need not reflect the composition of the community from which it was drawn. *United States v. Duff,* 76 F.3d 122, 125 (7th Cir.1996) (noting that "[s]ome panels will have an unusually low (or high) proportion of one group or another," but because " 'defendants are not entitled to a jury of any particular composition,' the makeup of any given venire is not significant, provided all rules for selection have been observed") (quoting *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)).

Here, thanks to a recent Seventh Circuit case which examined the Amended Jury Selection Plan (1997) for the Northern District of Indiana ("Amended Plan"), there can be no doubt that this Court "clearly follows the process and procedures recommended by the Act." *Phillips,* 239 F.3d at 841. "The Amended Plan only serv[es] to show the district's compliance with the provisions and procedure of the Act." *Id.* Even when given an opportunity to question this Court's jury administrator, Defendant failed to call into doubt this Court's compliance with the amended plan. *Duff,* 76 F.3d at 125 (rejecting challenge under the Act where defendant did not use his opportunity to discover whether district court was using proper procedures and, therefore, "cannot complain about the venire in this case"). Nothing requires the Court to grant Defendant relief under the Act "in the absence of any showing that there was a substantial failure to comply with the provisions [the Act]." *United States v. Koliboski,* 732 F.2d 1328, 1331 (7th Cir.1984). Therefore, Defendant is not entitled to relief under the Act.

*Sixth Amendment*

 Defendant next challenges the racial composition of the venire under the Sixth Amendment's guarantee that juries be selected from a fair cross-section of the community. To establish a prima facie case that the fair cross-section requirement has been violated, a defendant must show that: (1) the group allegedly excluded is a distinctive part of the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *United States v. Guy,* 924 F.2d 702, 705 (7th Cir.1991). Once a defendant makes a prima facie showing regarding these elements, the burden shifts to the Government to show that an overriding, significant governmental interest is manifestly advanced by the components of the jury selection process that result in the disproportionate exclusion of a distinctive group. *Guy,* 924 F.2d at 705. Importantly, there is no constitutional requirement that a venire or jury mirror the general population. *Duff,* 76 F.3d at 124. Thus, "the makeup of any given venire is not

significant, provided all rules for jury selection have been observed." *Id.* (citing *Holland v. Illinois,* 493 U.S. 474, 482–83, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990)); *Phillips,* 239 F.3d at 842.

Although he can satisfy some of the elements, Defendant has not made a prima facie showing by meeting his burden under the 3–part test. Defendant has satisfied the first prong. As this Court has previously held, African–Americans "unquestionably constitute a distinctive group." *United States v. Greer,* 900 F.Supp. 952, 954 (N.D.Ill.1995) (Lozano, J., sitting by designation); *see also Phillips,* 239 F.3d at 842. Next, Defendant may have satisfied the second prong. Census figures show that African–Americans constitute 19.6% of the population in the counties from which this Court draws its juries.[6] Defendant appears to argue that, because his venire consisted of only 4.76% African–Americans (2 of 42), the number of African–Americans in the venire was not fair and reasonable in relation to their number in the community. The Government does not dispute Defendant's conclusion on this prong, and the Court will assume *arguendo* that Defendant has established this element of his prima facie case.[7]

Thus, the resolution of Defendant's claim turns on whether he has demonstrated the systematic exclusion of African–Americans. Defendant has presented no direct evidence whatsoever of any systematic exclusion of African–Americans in this Court's jury pools. Instead, Defendant relies on mere conjecture by arguing that "the venire may have been a representative cross-section when [its members were summoned to the courthouse], [but] the failure to replace the no-shows and the [fact that] 14 [venire members were] taken for the *Suggs* case eliminated the fair cross-section." Defendant has offered no proof that these practices (allowing no-shows and pooling juries) have actually resulted in the systematic exclusion of African–Americans. As such, his claim cannot stand. *See Phillips,* 239 F.3d at 842 (finding defendant failed to make showing under third prong where he "failed to provide a factual basis for a finding of improper methods of jury selection"); *Grose,* 525 F.2d at 1119 ("Defendant has indicated no factual basis in his motion or in his brief to this court for a finding a improper methods of jury selection."); *cf. Davis,* 867 F.2d at 1016 (rejecting claim of systematic exclusion even where defendant offered

---

**6.** As noted above, Defendant's July 16, 2002, brief did not include any exhibits supporting his purported "United States census data" showing that 22% of the population in Lake and Porter Counties is African–American. However, the data provided as an exhibit to the Government's response brief appears to show that 19.6% of the total population of Lake and Porter Counties is African–American. When further limited to the voting-age population, i.e., over 17 years old, the data shows that 18.1% of the population of Lake and Porter Counties is African–American. For the sake of clarity, and despite the fact that raw census figures are "arguably overinclusive because they include children and other persons ineligible for jury service," the Court will use the 19.6% figure in its analysis. *Davis v. Warden, Joliet Correctional Inst. at Stateville,* 867 F.2d 1003, 1014 (7th Cir.1989)

("The overinclusiveness of defendant's statistic calls into question the weight a court should give to this evidence of unfair and unreasonable representation on the venire.")

**7.** "Still, by itself, even a marked lack of members of a distinctive group in the specific venire from which a jury is chosen does not necessarily establish underrepresentation in the jury pool." *Greer,* 900 F.Supp. 952, 955 (citing *United States v. Ashley,* 54 F.3d 311, 313 (7th Cir.1995) ("[A] discrepancy of less than 10% alone is not enough to demonstrate unfair or unreasonable representation of blacks on the venire"); *cf. Davis,* 867 F.2d at 1013 ("Raw census figures showing a disparity as large as 25% may establish that blacks were underrepresented on the jury list.")).

proof of effect of procedures in *one* prior case) (citing *Timmel v. Phillips*, 799 F.2d 1083, 1087 (5th Cir.1986) ("A one time example of underrepresentation of a distinctive group wholly fails to meet the systematic exclusion element in *Duren*.")).

Indeed, Defendant does not even allege that these practices actually *did* result in the exclusion of any African–Americans from his venire—he simply alleges that they "may" have. However, Defendant's venire was randomly selected pursuant to an authorized plan, and he has not presented any evidence to suggest that the 4.76% representation of African–Americans "was due to anything other than mere coincidence." *Guy*, 924 F.2d at 706; *Duff*, 76 F.3d at 124–25 (rejecting challenge to venire that included 4.4% African–Americans by noting that makeup of any given venire is not significant "provided all rules for selection have been observed"). Indeed, even the observation that there were *no* African–Americans on a panel that was drawn from a population containing African–Americans "simply is not sufficient to demonstrate any systemic exclusion." *Guy*, 924 F.2d at 706; *see also Phillips*, 239 F.3d at 842 (citing *Grose*, 525 F.2d at 1119). Accordingly, Defendant has failed to establish a violation of the Sixth Amendment's fair cross-section requirement.

Importantly, the procedures that Defendant speculates "may" have affected the racial composition of his venire are appropriate. First, allowing citizens to ignore their civic duty to serve on juries is acceptable, although regrettable. In *United States v. Gometz*, 730 F.2d 475 (7th Cir. 1984) (*en banc*), the Seventh Circuit considered whether the Jury Service and Selection Act (the Act) requires district court clerks to force citizens who receive juror questionnaires to complete and return those forms to the court. The Seventh Circuit concluded that unless so few citizens return juror questionnaires that the district court cannot generate enough names to staff its juries, the Act does not require district courts to pursue citizens who do not return their jury forms. *Gometz*, 730 F.2d at 480. Instead, "[t]he Act empowers—not requires—the clerk to pursue those who fail to return their juror qualification forms ...." *Id.* In reaching that conclusion, the Seventh Circuit reasoned that although "Congress wanted to make it possible for all qualified persons to serve on juries, [that] is different from *forcing* all qualified persons *to be available* for jury service." *Id.* (emphasis added). In fact, the Seventh Circuit's review of the Act's legislative history indicated that:

> Congress, rather than disapproving the element of nonrandomness implicit in any form of self-screening [as when people fail to return juror questionnaires], wanted people who lacked a sense of civic obligation *not* to serve on federal juries unless the number of "no shows" was so great that the qualified jury wheel could not be filled up.

*Id.* (emphasis in original). Additionally, the Seventh Circuit noted that most district court clerks lack the resources to issue and follow up on summons to unresponsive potential jurors. *Id.* "And anyone with experience as a trial judge knows that a person forced against his will to serve on a jury is apt to be an angry juror and that an angry juror is a bad juror." *Id.*

These considerations demonstrate that this Court can properly allow a limited number of venire members to shirk their civic duty by failing to appear for jury duty. In this case, the Court went one step further by directing its jury administrator to attempt to contact the no-shows by telephone—a measure that resulted in two more venire members making themselves available for jury service. Although

it is unfortunate that some potential jurors failed to appear in the courthouse when called for jury duty, the Court's refusal to force those people to appear does not give Defendant grounds to challenge the venire.

Second, the Court can properly "pool" juries by allowing the parties for one case to choose their jury before sending the remaining members of the venire to another courtroom for further jury selection. In *Wilson v. Butler*, 813 F.2d 664, 675 (5th Cir.1987), the Court addressed a defendant's Sixth Amendment claim arising from the fact the initial venire was divided to allow 38 of its members to go to another courtroom for voir dire on a different case. As a result, only one African–American venire member remained for voir dire in the defendant's case. *Id.* There was no allegation that the district court divided the venire on the basis of race or with any discriminatory intent. *Wilson*, 813 F.2d at 675. The appellate court concluded that the bare allegation that the district court divided the venire "fails to demonstrate that the jury selection mechanism [was] subject to abuse." *Id.*

Here, the Court's practice of pooling juries is not even susceptible to the type of abuse that might have been possible in *Wilson.* Instead of dividing the venire (a process which arguably could allow a rogue court staffer to stack the resulting venires on the basis of race), pooling ensures that all venire members, with the exception of those chosen to serve on the first courtroom's jury, are available to be selected in the second courtroom. No discriminatory division of the pooled venire is possible, and Defendant cannot challenge his venire on that basis.[8]

Finally, in his reply brief, Defendant offered a new argument: that the under-representation of African–Americans on his venire could be due to the fact that convicted felons are generally ineligible for jury service. *See* 28 U.S.C. § 1865(b)(5) (providing that district courts shall "deem any person qualified to serve on grand and petit juries ... unless he—... has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored"). Again without any factual support, Defendant points to statistics allegedly establishing that a disproportionate number of African–Americans in Indiana (but not necessarily within Lake and Porter counties) are disenfranchised due to their status as convicted felons. Although he does not expressly say so, Defendant apparently believes that the exemption in 28 U.S.C. section 1865(b)(5) is not constitutionally permissible and, therefore, that this supports his attacks on the venire under the Act or the fair cross-section component of the Sixth Amendment.

"It is well-settled that arguments not raised until the reply brief are waived." *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, No. 00–C–5658, 2002 WL 1466806, at *6 (N.D.Ill. July 8, 2002) (citing *United States v. Turner*, 203 F.3d 1010, 1019 (7th Cir.2000)); *see also United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*, 830 F.Supp. 1101, 1133 n. 52 (N.D.Ill. 1993) (citing *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir.1992) (argument not raised until reply brief is considered

---

**8.** Additionally, because jury pooling reduces the costs associated with empaneling multiple juries on a single day by reducing the number of venire members summoned to the courthouse, both the Seventh Circuit and Administrative Office of the United States Courts rec-

ommend the practice. Of course, because fewer venire members need to appear at the courthouse when the practice of jury pooling is employed, fewer citizens are unnecessarily inconvenienced by the need to appear for possible jury service.

waived, as it gives opposing side not opportunity to respond)); *Lockrey v. Leavitt Tube Employees' Profit Sharing Plan*, 748 F.Supp. 662, 667 (N.D.Ill.1990). Accordingly, Defendant's untimely argument is waived and the Court need not address it.

■ Even apart from its untimely arrival, Defendant's argument is unavailing. The Court's research did not reveal any case challenging the validity (constitutional or otherwise) of the Act's provision exempting convicted felons whose civil rights have not been restored from jury eligibility. As such, Defendant's argument finds no support in the caselaw. More importantly, several circuits have upheld the Act's related exemption barring from jury eligibility citizens who are merely *facing* felony charges. *See United States v. Greene*, 995 F.2d 793, 796 (8th Cir.1993); *United States v. Foxworth*, 599 F.2d 1, 4 (1st Cir.1979); *United States v. Test*, 550 F.2d 577, 594 (10th Cir.1976) (en banc). In *Greene*, 995 F.2d at 796, the Eighth Circuit expressly rejected the claim that the Act's exclusion of charged felons is impermissible because it has a disparate impact on potential jurors who are African–American. The Eighth Circuit concluded that the provision is rationally related to, among other things, " 'the purpose of trying to achieve a reputable and reliable jury ... whose judgment society can respect.' " *Id.* (quoting district court). This rationale applies with even more force to the Act's bar on *convicted* felons, and constitutional limits on juror qualifications will stand. "If blacks are underrepresented on the jury list because of legitimate juror qualifications, such as age, then the ... jury selection system does not unconstitutionally exclude blacks." *Davis*, 867 F.2d at 1015. Therefore, Defendant cannot complain that the Act bars convicted felons from jury service.

*CONCLUSION*

For the reasons set forth above, Defendant's July 15, 2002, oral motion to quash the petit jury venire is DENIED.